**RECEIVED**

JUL 2 2 2011

TONY R. MOORE, CLERK
BY_____
         DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 07-50106-01 |
| | CIVIL NO. 09-00755 |
| VERSUS | JUDGE WALTER |
| TERRENCE D. CLAIBORNE | MAGISTRATE JUDGE HORSNBY |

## MEMORANDUM RULING

Before the Court is an Application for Federal Writ of Habeas Corpus Under 28 U.S.C. § 2255 filed on behalf of Defendant, Terrence D. Claiborne. [Doc. #75]. For the reasons set forth below, Defendant's Application for Habeas Corpus is hereby **DENIED**.

## BACKGROUND FACTS

Defendant became the subject of police investigation in 2007 after the Drug Enforcement Agency provided records indicating their suspicion that he and a man named Daniel Ary were working together to distribute cocaine. In January 2007, police used a cooperating individual to purchase cocaine from Daniel Ary. The transaction was monitored by narcotics agents from the Shreveport Police Department and Caddo Parish Sheriff's Department, who watched as Ary sold 15.1 grams of powder cocaine. In Februrary 2007, Ary sold 29.2 grams of powder cocaine and 31.3 grams of crack cocaine to the same individual; in March 2007, he sold 9 grams of powder cocaine, also to the same individual.

In October 2007, law enforcement officers executed a search warrant for Ary's home. [Doc.

#2]. There, they discovered various controlled substances, including 17 grams of powder cocaine and 6 grams of crack cocaine. Following the search, Ary agreed to comply with the police. He said that he had been purchasing powder cocaine from the defendant, Terrence Claiborne, and that he purchased between 250 and 500 grams at a time. At the request of police, Ary made a recorded phone call to Terrence Claiborne and asked to purchase cocaine.

Police officers gave Ary a recording device and instructed him to meet Claiborne, purchase the cocaine, and then go to a pre-arranged meeting location. However, Ary did not follow these instructions. Instead, he went to Claiborne's residence, spoke with him briefly, and drove around to the back of a business next door. After a few minutes, Ary left and drove to a gas station to hide from the agents, but then called them from his cell phone. They instructed him to drive to a new location, and he did. Once there, Ary handed agents a white bag that contained what appeared to be a kilogram cocaine wrapper. He began to act nervous, and agents searched his vehicle. They discovered a bag of 803.8 grams of powder cocaine, approximately 36.9 grams of crack cocaine, and a digital scale.

Ary claimed that Claiborne had handed him two bags and said to throw one away and sell the other. Ary told agents that he had not told them about it because he would have to give the cocaine back to Claiborne if he could not pay for it. However, agents learned by listening to the recording that Ary had compromised the investigation. During the transaction, Ary told Claiborne that the police had asked him to set it up and pointed out the cars where the agents were sitting.

On October 16, 2007, agents obtained a warrant to search Claiborne's residence. In executing the warrants, they arrested Claiborne and seized four firearms, three vehicles, ammunition, a drug ledger, a car ledger, assorted paperwork, and bank records.

On November 17, 2007, a federal grand jury returned a 16-count indictment against Claiborne and Ary. [Doc. #11]. On February 15, 2008, Claiborne pleaded guilty to Counts One and Sixteen of the indictment, pursuant to a written plea agreement. [Docs #26-27]. Count One of the indictment charged Claiborne with Conspiracy to Possess With Intent to Distribute 50 Grams or More of Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1) & 846. Count Sixteen charged Defendant with Forfeiture, Pursuant to 21 U.S.C. §853. [Doc. #80 at 2].

During the plea hearing, Claiborne signed an agreement stating that his plea was "entered into freely, knowingly, and voluntarily with no threats or coercion, after due consultation with his attorney." [Doc. #27-4, at 6]. Defendant also signed a document entitled "Understanding of Maximum Penalty and Constitutional Rights." Therein he again stated that his plea was voluntary and made without threats or inducements from the Government or his attorney and that the only reason he entered the plea was because he was in fact guilty as charged. [Doc. #27-1]. On May 8, 2008, Defendant was sentenced to 120 months imprisonment and a 5 year term of supervised release. [Doc. #80, at 6, lines 3-16].

On May 8, 2009, Defendant filed "Application for Federal Writ of Habeas Corpus Under 28 U.S.C. § 2241." [Doc. #72]. However, the Court indicated that the motion was intended to be a § 2255 motion, not a § 2241 motion as stated in the motion itself. On June 10, 2009, the Court recommended that the action be dismissed or that Defendant amend the motion to indicate that it is a § 2255 and include all § 2255 claims he believed he had. [Doc. #74]. On June 26, 2009, Defendant filed an amended motion under § 2255. [Doc. #75]. On October 26, 2010, the Government filed a response. [Doc. #81-1].

## LAW AND ANALYSIS

Defendant seeks habeas relief on two grounds: (1) that his counsel was ineffective; and (2) that he "was denied due process of law because his plea of guilty was not freely and knowingly entered." [Doc. #75 at 3]. Defendant contends that he received ineffective assistance of counsel for two reasons: "A. Petitioner was improperly advised by Attorney Larry English prior to the tender of a guilty plea on this matter; and B. Petitioner received ineffective assistance of counsel at subsequent hearings on this matter, including the sentencing." [Doc. #75 at 4].

The issues that may be raised within the context of a habeas petition are limited to questions of constitutional rights and "a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *U.S. v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (internal citation omitted). Claims that are not of a constitutional nature which could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding. *Id.* Collateral review, such as a 2255 petition, is fundamentally different and cannot replace the function of a direct appeal. Once a conviction is rendered and a defendant has exhausted or waived his right to appeal, the "Court is entitled to presume the defendant stands fairly and finally convicted." *U.S. v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991).

The right to assistance of counsel is guaranteed by the Sixth and Fourteenth Amendments. It has long been understood that the right to counsel includes the right to *effective* assistance of counsel. *See McCann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Absent effective assistance of counsel, a "serious risk of injustice infects the trial itself." *Cuyler v. Sullivan*, 446 U.S. 335, 343, (1980). Thus, a defendant who receives ineffective assistance is constitutionally deprived of his right to counsel.

A criminal defendant's right to effective assistance of counsel is denied when (1) an attorney's performance falls below an objective standard of reasonableness and (2) counsel's performance thereby prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668 (1984); *Bryant v. Scott*, 28 F.3d 1411, 1414-1415 (5th Cir. 1994). Under the "reasonableness" prong of the *Strickland* analysis, a defendant must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The court is to presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. The defendant may overcome this presumption only by showing that under the "totality of the circumstances," the attorney's performance was "outside the wide range of professionally competent assistance." *Id.* at 690.

Under the "prejudice" prong of the *Strickland* test, the defendant must show "that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different." *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 2068.

The two prongs of the *Strickland* test need not be analyzed in any particular order. *See Goodwin v. Johnson*, 132 F.3d 162, 173 n.6 (5th Cir. 1998); *Murray*, 736 F.2d at 282. Further, if a defendant fails to establish either prong of the *Strickland* test, then his claim of ineffective assistance of counsel must fail. *See Tucker v. Johnson*, 115 F.3d 276, 280 (5th Cir. 1997); *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994); *Williams v. Collins*, 16 F.3d 626, 631 (5th Cir. 1994).

In cases where a defendant has entered a guilty plea the only question for the Court to determine in the context of a habeas petition is whether defendant's decision to enter the guilty plea

5

was voluntary. *U.S. v. Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008). "This is so because in general once a guilty plea has been entered, all nonjurisdictional defects in the proceedings against a defendant are waived and the waiver includes all claims of ineffective assistance of counsel, except insofar as the alleged effectiveness relates to the voluntariness of the giving of the guilty plea." *Id.* (internal quotations omitted).

"To prove prejudice for an ineffective assistance of counsel claim in the context of a guilty plea, the habeas petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (citing *Bond v. Dretke*, 384 F.3d 166, 167-68 (5th Cir. 2004)). The "prejudice" element requires more than a mere allegation; the Defendant must affirmatively prove it. *U.S. v. Thompson*, 44 F.3d 1004, 1995 WL 10515, at 2 (5th Cir. 1995) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).

### I. Effectiveness of Counsel

Defendant first asserts that he was "denied his right to counsel as guaranteed by the Sixth Amendment and Fourteenth Amendment of the Constitution of the United States as petitioner's counsel was ineffective and said ineffectiveness caused petitioner prejudice." [Doc. #75 at 3]. He bases this on two arguments: "(A) Petitioner was improperly advised by Attorney Larry English prior to the tender of a guilty plea on this matter; and (B) Petitioner received ineffective assistance of counsel at subsequent hearings on the matter, including the sentencing."[Doc. #75 at 4].

### A. Defendant's Counsel Prior to His Guilty Plea

As the first basis for habeas relief based on ineffective assistance of counsel, Defendant avers as follows:

> The representation provided by Attorney Larry English constitutes

> ineffective assistance of counsel since the petitioner was improperly advised of the circumstances and consequences surrounding his tender of a guilty plea. Attorney English allowed petitioner to plead guilty to the crime of possession with intent to distribute 'crack cocaine' even though petitioner was not ever involved with or in possession of any 'crack cocaine.'

[Doc. #75 at 4-5].

Defendant has offered no proof, however, that English's representation was ineffective or, more importantly, that it prejudiced him. During the plea hearing, the Court discussed Defendant's representation:

> The Court: ... Have you had all the time you need to discuss your case with Mr. English?
>
> The Defendant: Yes, sir.
>
> The Court: Are you satisfied with him as a lawyer?
>
> The Defendant: Yes, sir.

[Doc. #80-1, 3:20-4:3].

Furthermore, Defendant's petition mischaracterizes the Defendant's crime. Defendant plead guilty to counts 1 and 16 of the indictment. [Doc. # 80-1 at 2]. Count 1 is a charge for conspiracy to possess with intent to distribute crack, not a charge of actual possession. [Doc. #11]. Therefore, Defendant's allegation that English allowed him to plead guilty to possession of crack is simply untrue. At the sentencing, English specifically raised the issue that Defendant did not sell crack cocaine:

> Mr. English: Your honor, just for the record, I want to make a clarification. The actual facts of it is: He sold those individuals powder

>     cocaine, which they subsequently converted to crack cocaine. And so obviously, he's there with it, but he didn't actually sell crack cocaine –
>
> The Court:   Well, I guess that's something for me to consider –
>
> Mr. English: At sentencing, your Honor –
>
> The Court:   – because it's part of the conspiracy –
>
> Mr. English: Yeah, that's what the charge was – that's why we're here, your Honor.

[Doc. #80-1, 6:22-7:7]. After English raised the issue with the Court, the Court confirmed the circumstances with Defendant:

> The Court:       All right. Is that right, Mr. Claiborne?
>
> The Defendant:   Yes, sir.
>
> The Court:       You knew they were going to make it into crack?
>
> The Defendant:   I didn't know, you know.
>
> The Court:       But you knew they were moving it on?
>
> The Defendant:   Yes, sir.
>
> The Court:       And you didn't know in what form they were going to move it on?
>
> The Defendant:   Yes, sir.
>
> The Court:       All right. You have filed, you and your attorney have filed a factual basis for this. Did you read that?
>
> The Defendant:   Yes, sir.

| | |
|---|---|
| The Court: | Did you understand it? |
| The Defendant: | Yes, sir. |
| The Court: | And you agree with it? |
| The Defendant: | Yes, sir. |
| The Court: | And with that modification that we were just talking about, that in fact you passed it on to somebody who subsequently cooked it into crack, but you didn't know what they were going to do with it, nor did you care? |
| Mr. English: | Yes. |
| The Defendant: | Yes, sir. |
| The Court: | Okay. Are you sure? |
| The Defendant: | Yes, sir. |

[Doc. #80-1, 7:14-8:14].

Defendant further contends that his attorney was ineffective because he failed to investigate the sale of cocaine to co-defendant Ary, and that "this failure caused petitioner to enter into a specific plea agreement [of] which he is not guilty." [Doc. #75 at 6]. Defendant argues that following his meeting with Ary, "there was a lot of time unaccounted for before Mr. Ary called agents from his cell phone and agreed to meet authorities at another locale," so Ary could instead be responsible for the large amount of cocaine. [Doc. #75 at 5].

While an attorney's failure to make an independent investigation may call into question the adequacy of his representation, "a particular decision not to investigate must be directly assessed for

9

reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Here, Attorney English made a reasonable decision regarding the circumstances of Defendant's sale of drugs to Ary.

During the transaction, Ary was wearing a recording device, and agents were able to listen to the conversation he had with Defendant. During that conversation, Ary said the police had approached him, asked him to contact Defendant, followed him, and were sitting in cars outside. Defendant then told Ary he had the "shit in my house," and that Ary should drive around to the side of the house so he could pass the "shit" through a hole in his fence. [Doc. #1-1, at 5].

Because this entire conversation was recorded and monitored by police, it was reasonable for Attorney English to accept it and not investigate the source of cocaine further. He was not simply relying "on the government's version of the facts" instead of "his own reasonable investigation," as Defendant claims. [Doc. #75 at 6]. A competent attorney would have little reason to investigate this type of transaction when it was recorded by police. Furthermore, a more intrusive investigation would likely not procure even an iota of evidence, simply due to the nature of the transaction itself. Therefore, English's decisions regarding an investigation were those of a competent attorney and not evidence of insufficient representation.

### B. The Assistance of Counsel at the Sentencing

Defendant further asserts a belief that he received ineffective representation because he was sentenced to "one hundred and twenty months of physical incarceration for a first time felony conviction." [Doc. #75 at 8]. He argues that he was sentenced to this based on a plea he would not have tendered, but for ineffective counsel. Since Defendant's possession of firearms was considered with regard to his sentence, he argues English's representation was ineffective based on the

"Constitutional right to possess the weapons seized." [Doc. #75 at 8].

However, prior to the sentencing, English filed the following objections on behalf of Defendant:

> Objection No. 1: Counsel for the defendant objects to paragraph 25 of the PSR and claims the defendant did not plea guilty to the possession of the weapons charges.
>
> Objection No. 2: Counsel for the defendant objects to paragraph 57 of the PSR and claims the defendant is eligible for U.S.S.G. §5C1.2, Limitation on Applicability of Statutory Minimum Sentences in Certain Cases.

The objections concerning the firearms were discussed during the sentencing:

> THE COURT: And there are two objections – well, really one. If it's resolved against you, then the second one goes by the way. Yes, I note that he would be eligible for the safety valve but for the fact of the gun.
>
> MR. ENGLISH: That's correct, your Honor.
>
> THE COURT: In the case law, Mr. English, just seems – do you admit the facts?
>
> MR. ENGLISH: I admit the facts, your Honor.
>
> THE COURT: So that what we have here is a guy, they get an address, they go in, they find – they have information drugs have been sold out of the house, and then they have the records and other indicia of drug dealings, and they have the guns. Right?

11

MR. ENGLISH: Correct, your Honor.

THE COURT: The case law is just against you, Mr. English.

MR. ENGLISH: Well, your Honor, I think the Government has to establish, your Honor, that the weapons were used –it's not enough that he had weapons in the house, your Honor. The Government has to establish that those weapons were somehow, have some connection to the drugs.

THE COURT: Well, the very fact that there are guns in the house and drugs are being dealt out of it and that in fact that same day, drugs were dealt out of it and the records are all there –and I mean, you didn't find me under a pumpkin last night. That's dangerous business. Guns are kept – I have been told hundreds of times that the reason for the gun is that it's a dangerous business: I keep it there for protection.

MR. ENGLISH: But your Honor, in this particular case with Mr. Claiborne, the Government had Mr. Claiborne under surveillance and all of his co-conspirators under surveillance for some time.

THE COURT: Yes.

MR. ENGLISH: There is no evidence in Mr. Claiborne's personal history, in his recent personal history or through this whole process, that Mr. Claiborne ever has had any violent tendencies, ever pulled a weapon on anybody, ever used a weapon on anybody. Mr. Claiborne

is a country boy from Mansfield, Louisiana, and he collects weapons, your Honor. The mere fact is that he collects weapons.

THE COURT: Well, you just don't collect weapons when you're dealing in drugs, Mr. English. I would find that the preponderance of the evidence weighs against him. I will overrule your objection...

\*\*\*\*\*\*

MR. ENGLISH: Your Honor, you're talking about in no circumstances you can go down to 87 months, your Honor?

THE COURT: Not and be truthful to my oath that I will follow the law of the country.

MR. ENGLISH: Well, your Honor, if we're looking at 120 months, which is the minimum – could I chat with him for a second?

\*\*\*\*\*\*

THE DEFENDANT: ...As far as the weapons, I never – I just growed up in the country around weapons. I never used them. Never once been fired. Other than that, I just apologize and just try to change my life.

THE COURT: I guess I should have said this earlier. These aren't sporting weapons. One of them is an assault rifle. One is a 50 caliber, if I remember correctly. I am going to go as low as I can go. I am going to adopt the factual findings, overrule the objection, and commit you to the custody of the Bureau of Prisons for 120 months.

>I select that because it's the minimum that I can give and this is your first offense...

[Doc. #80, 2:12-4:6; 4:18-25, p. 5:20-6:6].

As illustrated by the proceedings, English made several attempts in requesting that the Court sentence Defendant without considering the firearms. The Court's decision to consider the firearms was not based on Defendant's lack of representation. Therefore, Defendant's claim that he entered his plea based on inadequate representation cannot stand.

## II. Guilty Plea was Freely and Knowingly Entered

The second basis of Defendant's motion is grounded in the argument that he did not voluntarily enter a guilty plea. He argues, "if the quality of counsel's service falls below a certain minimum level, the client's guilty plea cannot be knowing and voluntary because it will not represent an informed choice. A lawyer who is not familiar with the facts and law relevant to his client's case cannot meet that required minimum level." [Doc. #75 at 8]. However, there is no evidence to suggest that Defendant's attorney did not act as a reasonable, competent attorney should. Furthermore, Defendant stated at the plea hearing that he understood the situation:

>THE COURT: How old are you, sir?
>
>THE DEFENDANT: 35.
>
>THE COURT: How far did you go in school?
>
>THE DEFENDANT: Twelfth grade.
>
>THE COURT: And have you taken any medication or anything that would interfere with your ability to understand what's going on here today?

THE DEFENDANT: No, sir.

THE COURT: Do you understand what's going on?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. English, you've just talked to your client. Any doubt in your mind as to his competence to plead?

MR. ENGLISH: No, your Honor.

THE COURT: I find him competent. Have you had all the time you need to discuss your case with Mr. English?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with him as a lawyer?

THE DEFENDANT: Yes, sir.

THE COURT: As I understand, you'll be pleading guilty to distribution of 50 grams or more of crack cocaine; is that right?

THE DEFENDANT: Yes, sir.

[Doc. #80, 3:7-4:3].

The test for whether or not a defendant's guilty plea was voluntary given is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. U.S.*, 362 U.S. 402. The Defendant had the ability to consult with his lawyer as well as an understanding of the situation and consequences of the guilty plea. He therefore entered the plea freely and knowingly.

## CONCLUSION

For the reasons assigned herein, the Court concludes that Defendant has not shown that his counsel's actions fell below an objective standard of reasonableness and that the ineffective assistance of counsel prejudiced him. Accordingly, Defendant's Application for Federal Writ of Habeas Corpus [Doc. #75] is **DENIED**.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE